Filed 3/5/13  P. v. Frick CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JASON MICHAEL FRICK,<br><br>    Defendant and Appellant. | A133676<br><br>(Mendocino County<br> Super. Ct. No. SCUK-CRCR-11-16554) |

Defendant entered a plea of guilty to possession of a destructive device (Pen. Code, former § 12303) and possession of a firearm by a convicted felon (Pen. Code, former § 12021, subd. (a)(1)), and admitted two prior felony strike convictions (Pen. Code, §§ 667, subds. (d), (e), 1170.2, subds. (b), (c)).[1]  After defendant's motion to dismiss one of the prior strike convictions (§ 1385) was denied, he was sentenced to two terms of 25 years to life in state prison under the three-strikes law, to be served concurrently.

In this appeal he argues that his trial counsel was incompetent for failing to object to the admission of evidence at the hearing on his motion to dismiss a prior strike conviction brought pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  He also seeks resentencing under the recent amendments to the three-strikes law, and claims the imposition of concurrent terms for his convictions constituted

---

[1] All further statutory references are to the Penal Code; all references to rules are to the California Rules of Court.

impermissible multiple punishment.  We conclude that counsel was not incompetent for failing to object to the admission of evidence at the hearing on his *Romero* motion, defendant is not entitled to relief in this appeal from his three-strikes sentence, and the imposition of concurrent terms was not error.  We therefore affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY[2]

The convictions are based on an incident that ensued from efforts by officers of the Mendocino County Major Crimes Task Force to serve a search warrant at 24615 Birch Street in Willits, a residence occupied by defendant, who was the subject of a $200,000 arrest warrant from Humboldt County for numerous outstanding felony charges.  At 3:15 p.m., the officers were advised that defendant was inside the house, armed with a shotgun.  The house was surrounded by a Special Weapons and Tactical (SWAT) team of officers, and defendant was ordered to leave the residence and surrender.  Defendant told the officers that he "had a bomb and was not going to come out without defending himself."  Nearby residences were evacuated.

Soon thereafter a loud explosion from inside the residence was heard.  Defendant stated that he discharged his shotgun into the ceiling after a laser was pointed at him.  Defendant claimed that he was "facing a third criminal strike and looking at life in prison."  He made several demands to the SWAT team, and asserted that he was in possession of two to four bombs.

At 2:09 a.m., defendant came out of the house and surrendered.  He informed the officers that he had disabled two bombs, but another was left in the bedroom of the residence.  The remaining bomb, which contained gun powder, BB's and nails, was found in the bedroom and detonated.  Officers also discovered a loaded Mossberg 12-gauge shotgun in the house, along with additional shotgun shells and an expended shell in the bedroom.  A large hole was observed in the bedroom ceiling.

Defendant stated during subsequent interviews that he "had no intentions of hurting anyone other than himself."  He was aware of the Humboldt County arrest

---

**2** Due to defendant's plea and the lack of a preliminary hearing the facts pertinent to the convictions are taken from the police report as reiterated in the probation report.

warrant, and was attempting to hide at the home a friend in Mendocino County when the search warrant was served. He decided not "to be taken alive," due to the prospect of a life prison term, so he ran into the bedroom where weapons were located. He used methamphetamine and intended to kill himself, but after conversations with his family and the officers he eventually decided to surrender.

Defendant filed a motion pursuant to *Romero, supra,* 13 Cal.4th 497, to dismiss one of his prior strike convictions. At the combined *Romero* motion and sentencing hearing, without objection from the defense the prosecutor referred to an "attachment" that was omitted from the opposition to the motion: an "accusatory pleading from Humboldt County."[3] The prosecutor proceeded to recite the Humboldt County charges that were pending when defendant left the county: stalking, corporal injury to a spouse, residential burglary, possession of a concealed firearm in a vehicle, possession of methamphetamine, possession of a dirk or dagger, possession of a firearm in a school zone, cruelty to a child by endangering health, vandalism, "unlawful use of tear gas, and possession of ingestion device."

The prosecutor also submitted a declaration from a Humboldt County assistant district attorney, Wesley Keat, who reviewed the crime reports related to the Humboldt County charges, and recited a factual summary in support of a request to increase bail in that proceeding: On October 14, 2010, the victim reported to a deputy sheriff that defendant, her "ex-boyfriend," entered her apartment uninvited and accused her of "seeing someone else." When a neighbor called 911 for help, defendant pushed the victim to the floor, threw her phone down, and left. On October 16, 2010, defendant was encountered near a high school by a deputy sheriff who was dispatched to investigate a suspicious person report. Defendant was found in possession of a 12-gauge shotgun, a dagger and tear gas, and stated, "I should have done what I was going to do." Keat added that defendant's extensive criminal history, including a prior 13-year sentence for first

---

[3] In the opposition to the *Romero* motion filed in the trial court the prosecution referred to the "Humboldt County first amended felony accusatory pleading" as an attachment, but the attachment was not included.

degree burglary and taking a hostage with use of a firearm, demonstrates he "poses an extreme danger to safety and his bail should be increased to reflect that." In further opposition to the *Romero* motion in the present case the prosecutor narrated a synopsis of Mendocino County convictions. The prosecutor also referred to defendant's total of seven prior strike convictions, only two of which were alleged, to argue that defendant "is a danger to this community." Defense counsel responded that the Humboldt County charges would be "very difficult for Humboldt County to prove," particularly because the victim of the charged domestic violence offense wrote a letter on defendant's behalf in the present case.

The trial court denied the motion to dismiss a prior strike, and proceeded to impose sentence. Defendant was sentenced to a term of 25 years to life for possession of a destructive device, and a concurrent term of 25 years to life for possession of a firearm by a convicted felon.

## DISCUSSION

Defendant makes several claims of ineffective assistance of counsel related to the presentation of his *Romero* motion to dismiss one of his prior strike convictions. His claims are focused on the failure of his attorney to object to the admission of evidence of his pending "unadjudicated charges" in Humboldt County, consisting of both the prosecutor's recitation of the charges and the declaration of Humboldt County assistant district attorney Wesley Keat, which offered a factual synopsis from the police report of the basis for the charges. Defendant argues that evidence of the charges was objectionable for two reasons, neither of which was raised by his attorney: first, the prosecution failed to give proper advance notice of the evidence; and second, the evidence was hearsay and admitted in contravention of both his statutory and due process rights. He therefore asserts that a "reasonably competent attorney would have objected" to admission of the reading of the charges and the declaration. Defendant also faults his attorney for failing to object to the trial court's assumption and ultimate finding that he "would be found guilty in Humboldt County," based only on the charges and police

4

report, a violation of his "constitutional right to be presumed innocent until the contrary was proved beyond a reasonable doubt."

The principles that govern defendant's claim of "constitutionally inadequate representation are settled." (*In re Lucas* (2004) 33 Cal.4th 682, 721.) "To establish a claim of inadequate assistance, a defendant must show counsel's representation was 'deficient' in that it 'fell below an objective standard of reasonableness. . . . [¶] . . . under prevailing professional norms.' [Citations.] In addition, a defendant is required to show he or she was prejudiced by counsel's deficient representation. [Citations.] In determining prejudice, we inquire whether there is a reasonable probability that, but for counsel's deficiencies, the result would have been more favorable to the defendant." (*People v. Frye* (1998) 18 Cal.4th 894, 979.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*People v. Williams* (1997) 16 Cal.4th 153, 215; see also *In re Jones* (1996) 13 Cal.4th 552, 561.)

In addition, the California Supreme Court has "repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Without a definitive indication in the record before us of inexcusable ignorance or oversight by defendant's attorney rather than strategic considerations as the basis for the decision to offer defendant's testimony, we cannot find inadequate assistance of counsel on appeal. (*People v. Hart* (1999) 20 Cal.4th 546, 630; *People v. Williams, supra,* 16 Cal.4th 153, 261–262; *People v. Montiel* (1993) 5 Cal.4th 877, 921; *People v. Aubrey* (1999) 70 Cal.App.4th 1088, 1105.) " 'Because the appellate record ordinarily does not show the reasons for defense counsel's actions or omissions, a claim of ineffective assistance of counsel should generally be made in a petition for writ of habeas corpus, not on appeal.' [Citation.]" (*People v. Lucero* (2000) 23 Cal.4th 692, 728–729.)

# I. The Adequacy of Notice of the Evidence.

Looking first at trial counsel's failure to challenge the lack of notice of the evidence of the Humboldt charges, we observe that the essence of procedural due process is notice and an opportunity to respond. (*Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, 546; *People v. Minor* (2010) 189 Cal.App.4th 1, 18.) "The quantum and quality of due process required under specific circumstances varies. . . . 'The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner. Consequently, due process is a flexible concept, as the characteristic of elasticity is required in order to tailor the process to the particular need. [Citations.] Thus, not every situation requires a formal hearing accompanied by the full rights of confrontation and cross-examination. [Citation.] "What due process does require is notice reasonably calculated to apprise interested parties of the pendency of the action affecting their property interest and an opportunity to present their objections. . . . ." [Citation.]' " (*People v. Minor, supra,* at p. 20, quoting from *Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1069–1072.)

At a sentencing hearing, a defendant's due process rights are protected if he is given notice of potential aggravating and mitigating factors prior to the hearing or in the probation report (§ 1203.72), and an opportunity to contest those factors; the rigorous procedural safeguards required during the guilt phase are not required. (*People v. French* (2008) 43 Cal.4th 36, 48; *People v. Foster* (1993) 14 Cal.App.4th 939, 947; *People v. Rivera* (1989) 212 Cal.App.3d 1153, 1161.) Evidence pertinent to sentencing decisions, in the nature of statements in aggravation and mitigation, must be filed and served at least four days before the time set for sentencing under section 1191 or the time set for pronouncing judgment on revocation of probation under section 1203.2, subdivision (c) if imposition of sentence was previously suspended. (§ 1170, subd. (b); rule 4.437(a).)[4]

---

[4] Rule 4.437 reads in full: "(a) Time for filing and service [¶] Statements in aggravation and mitigation referred to in section 1170(b) must be filed and served at least four days before the time set for sentencing under section 1191 or the time set for pronouncing judgment on

Any sentencing statement may include a "summary of evidence that the party relies on as circumstances justifying the imposition of a particular term," and "generally describe the evidence to be offered, including a description of any documents and the names and expected substance of the testimony of any witnesses." (Rule 4.437(c)(1), (2).) "No evidence in aggravation or mitigation may be introduced at the sentencing hearing unless it was described in the statement, or unless its admission is permitted by the sentencing judge in the interests of justice," and "[a]ssertions of fact in a statement in aggravation or mitigation must be disregarded unless they are supported by the record in the case, the probation officer's report or other reports properly filed in the case, or other competent evidence." (Rule 4.437(c)(2), (d).)

Here, the probation report was timely filed, as was the prosecution's opposition to the *Romero* motion, both of which referred to the pending Humboldt County charges. The recitation of the charges and the declaration, which contained more detailed information about the Humboldt County charges, were omitted from the documents or attachments, apparently inadvertently. However, the declaration was given to defense counsel during discovery. A statement of the factual basis for the Humboldt County

revocation of probation under section 1203.2(c) if imposition of sentence was previously suspended.

"(b) Combined statement [¶] A party seeking consideration of circumstances in aggravation or mitigation may file and serve a statement under section 1170(b) and this rule.

"(c) Contents of statement [¶] A statement in aggravation or mitigation must include:

"(1) A summary of evidence that the party relies on as circumstances justifying the imposition of a particular term; and

"(2) Notice of intention to dispute facts or offer evidence in aggravation or mitigation at the sentencing hearing. The statement must generally describe the evidence to be offered, including a description of any documents and the names and expected substance of the testimony of any witnesses. No evidence in aggravation or mitigation may be introduced at the sentencing hearing unless it was described in the statement, or unless its admission is permitted by the sentencing judge in the interests of justice.

"(d) Support required for assertions of fact [¶] Assertions of fact in a statement in aggravation or mitigation must be disregarded unless they are supported by the record in the case, the probation officer's report or other reports properly filed in the case, or other competent evidence.

"(e) Disputed facts [¶] In the event the parties dispute the facts on which the conviction rested, the court must conduct a presentence hearing and make appropriate corrections, additions, or deletions in the presentence probation report or order a revised report."

7

charges was also included in a psychological evaluation and report provided to defense counsel well before the hearing. Defense counsel's argument at the hearing reveals that she was thoroughly informed of the nature and underlying substance of the Humboldt County charges. Not only that, counsel took advantage of the opportunity to fully respond to the prosecution's reference to the charges. Any failure of the prosecution to provide further notice of the sentencing information did not constitute a violation of defendant's due process rights and was not prejudicial to him. (*People v. Minor, supra,* 189 Cal.App.4th 1, 18–19.) Thus, counsel's failure to object to the presentation of the information on the ground of lack of notice was not prejudicial to defendant.

## II. *The Admissibility of the Evidence*.

We turn to defendant's claim that the evidence of the Humboldt County charges was inadmissible. Defendant submits that the prosecution's reference to the "unadjudicated charges without supporting facts" was impermissible, and the contents of the declaration by Keats, which described the two incidents on which the charges were based, was hearsay. Defendant therefore argues that a "reasonably competent attorney would have objected" to both the reading of the Keats' declaration and the "prosecutor's recitation of the allegation of the Humboldt County charges."

We conclude that no improper consideration of evidence occurred. The " 'scope of information a sentencing court may consider is very broad . . . .' " (*People v. Whitten* (1994) 22 Cal.App.4th 1761, 1766, quoting *People v. Stanley* (1984) 161 Cal.App.3d 144, 150.)[5] " ' " 'Due process does not require a judge to draw sentencing information through the narrow net of courtroom evidence rules . . . [. S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source . . . whence it comes.' [Citation.]" [Citation.]' [Citation.]" (*People v. Prosser*

---

[5] Section 1170, subdivision (b), provides in part: " 'In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing.' " (*People v. Hall* (1994) 8 Cal.4th 950, 960.)

(2007) 157 Cal.App.4th 682, 692; see also *People v. Hove* (1999) 76 Cal.App.4th 1266, 1275.) " 'Due process does not require that a criminal defendant be afforded the same evidentiary protections at sentencing proceedings as exist at trial. [Citations.] A sentencing judge may consider responsible unsworn or out-of-court statements concerning the convicted person's life and characteristics. [Citations.]' [Citation.]" (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1128; see also *People v. Arbuckle* (1978) 22 Cal.3d 749, 754–755.) "Fundamental fairness, however, requires that there be a substantial basis for believing the information is reliable." (*People v. Lamb* (1999) 76 Cal.App.4th 664, 683.) " 'Reliability of the information considered by the court is the key issue in determining fundamental fairness' in this context." (*People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080.)

The fact that the probation report and declaration contained hearsay is in itself not improper. (*People v. Santana* (1982) 134 Cal.App.3d 773, 780; *People v. Valdivia* (1960) 182 Cal.App.2d 145, 148.) "Due process does not prohibit the 'use where appropriate of the conventional substitutes for live testimony, including *affidavits, depositions, and documentary evidence*.' [Citation.] Documentary evidence must be accompanied by reasonable indicia of reliability to be admissible." (*People v. Gomez* (2010) 181 Cal.App.4th 1028, 1034, italics added.) "California law affords the trial court broad discretion to consider relevant evidence at sentencing. '[T]he court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing.' (§ 1170, subd. (b).) The trial court may consider any 'criteria reasonably related to the decision being made.' (Cal. Rules of Court, rule 4.408(a).) The court specifically is authorized to consider 'the record in the case.' (§ 1170, subd. (b).)" (*People v. Towne* (2008) 44 Cal.4th 63, 85, fn. omitted.)

Defendant claims that consideration of the affidavit and the prosecutor's narration of the Humboldt County charges violated sections 1203 and 1204, which provide that at a

9

sentencing hearing the aggravating and mitigating circumstances shall be presented by the testimony of witnesses examined in open court, and no affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as stated in the written probation report, which may include any information gathered by a law enforcement agency relating to the defendant.[6] "Under sections 1203 and 1204, the sentencing judge may receive information upon which to base his decision in either (1) a probation report, which must be provided to the defendant at least two days before sentencing, or (2) a hearing in open court on aggravating, or mitigating circumstances. Section 1204 prohibits receipt of information from other sources." (*In re Calhoun* (1976) 17 Cal.3d 75, 83; see also *id.* at pp. 80–85; and see *In re Hancock* (1977) 67 Cal.App.3d 943, 948, fn. 6, para. 2.)

Sections 1203 and 1204 do not govern receipt or admissibility of evidence at a hearing on a *Romero* motion pursuant to section 1385 to strike a prior conviction. The *Romero* proceeding is not one in which the court merely considers statutory aggravating and mitigating circumstances under sections 1203 and 1204. Rather, "In exercising its discretion to strike a prior felony conviction pursuant to section 1385, subdivision (a), or

---

[6] Section 1203, subdivision (b)(2)(A)–(B), states: "The probation officer shall immediately investigate and make a written report to the court of his or her findings and recommendations, including his or her recommendations as to the granting or denying of probation and the conditions of probation, if granted. [¶] (B) Pursuant to Section 828 of the Welfare and Institutions Code, the probation officer shall include in his or her report any information gathered by a law enforcement agency relating to the taking of the defendant into custody as a minor, which shall be considered for purposes of determining whether adjudications of commissions of crimes as a juvenile warrant a finding that there are circumstances in aggravation pursuant to Section 1170 or to deny probation."

Section 1204 states: "The circumstances shall be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county, out of court, upon such notice to the adverse party as the court may direct. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court, or a judge thereof, in aggravation or mitigation of the punishment, except as provided in this and the preceding section. This section shall not be construed to prohibit the filing of a written report by a defendant or defendant's counsel on behalf of a defendant if such a report presents a study of his background and personality and suggests a rehabilitation program. If such a report is submitted, the prosecution or probation officer shall be permitted to reply to or to evaluate the program."

in reviewing such a ruling, the court must consider 'whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*People v. Lee* (2008) 161 Cal.App.4th 124, 127–128.)

Here, the prosecutor's recitation of the Humboldt County charges, and the declaration of assistant district attorney Keat based on the police reports of the charged crimes, bore the requisite indicia of reliability and were not demonstrated to be inadequate or misleading in any way. (*People v. Santana, supra,* 134 Cal.App.3d 773, 783.) Defendant was aware of the nature, grounds, and consequences of the evidence, and was afforded the opportunity to present evidence or argument in opposition to counteract or correct any portion of the information related to the Humboldt County charges. Defendant did not have the fundamental constitutional right to confront and cross-examine the declarants, but rather was limited to challenging the statements by presenting his own evidence. (See *People v. Sapp* (2003) 31 Cal.4th 240, 291; *People v. Arbuckle, supra,* 22 Cal.3d 749, 754–755; *In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1846–1847; *People v. Goodner* (1992) 7 Cal.App.4th 1324, 1329.) Without any indication in the record before us that the information was materially untrue, the trial court was authorized to consider hearsay statements in the declaration. (See *People v. Eckley, supra,* 123 Cal.App.4th 1072, 1080.) We conclude that admission of the evidence did not violate defendant's statutory or procedural due process rights. (*People v. Minor, supra,* 189 Cal.App.4th 1, 22–23.) Therefore, counsel was not incompetent for failing to make an objection that ultimately would have proved futile. (*People v. Mendoza* (2000) 24 Cal.4th 130, 171.)

### III. The Trial Court's Consideration of the Evidence.

Defendant also asserts that counsel was incompetent for failing to object to the trial court's "finding that the unproved charges were probably true," in violation of the presumption of innocence. We are dubious that defense counsel may be found

11

incompetent for not contesting a *finding* by the trial court. In any event, the court did not make an improper assumption that defendant "would be found guilty in Humboldt County," as defendant suggests. Instead, the court properly considered the Humboldt County charges and the declaration merely as evidence pertinent to the *Romero* motion, not as convictions. The court commented that defendant was "consciously aware" of the "potential third strike offense," and the "probability that he was facing a third strike conviction" in Humboldt County, not to assume defendant would be convicted, but as a "troubling" factor that precipitated the Mendocino County "standoff" with the police. The court was justified in considering the conduct underlying the pending Humboldt County charges that did not yet, and ultimately may not, result in convictions. Facts relevant to sentencing need be proved only by a preponderance of the evidence, and in a sentencing proceeding which is governed by a standard of proof lower than beyond a reasonable doubt, the court may even consider an acquittal of criminal charges. (See *United States v. Watts* (1997) 519 U.S. 148, 156–157; *Dowling v. United States* (1990) 493 U.S. 342, 349; *People v. Towne, supra*, 44 Cal.4th 63, 86.) Finally, in light of the entire record, even without consideration of the Humboldt County charges it is not reasonably probable the court would have granted defendant's *Romero* motion. No incompetence of counsel or prejudice has been established.

## IV. The Effect of the Amendment of the Three Strikes Law.

In a supplemental brief, defendant raises two additional issues, the first of which is that he should be granted retroactive application of the recent amendment of the three strikes law. On November 6, 2012, California voters approved Proposition 36, which modified the three strikes law; the enactment was effective the following day. Proposition 36 limits three strikes sentences to current convictions for serious or violent felonies, or a limited number of other felonies that the record does not on its face establish here. (See §§ 1170.12, subd. (c), 667, subd. (c).) Defendant was sentenced before the effective date of Proposition 36 to 25 years to life under the former three strikes law for crimes that were neither serious nor violent felonies. If defendant had been sentenced today, he would not be subject to a 25-year-to-life three-strikes sentence

12

unless the prosecution were to plead and prove one of the specified exceptions to the third-strike sentencing limitation.[7]

Defendant points out that if he had been sentenced under the Proposition 36 version of the three strikes law his maximum term would be seven years and four months on counts 1 and 2, plus two years for the "on bail" enhancement, rather than 25-years-to-life. He acknowledges that Proposition 36 also added section 1170.126, subdivision (a), which explicitly provides for the resentencing of "persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." A person serving a three strikes sentence for a current conviction that is not a serious or violent felony "may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause, before the trial court that entered the judgment of conviction in his or her case, to request resentencing in accordance with" Proposition 36. (Pen. Code, § 1170.126, subd. (b).) An inmate is eligible for resentencing unless he has prior convictions for certain specified offenses. (*Id*., subd. (e).) If the prisoner is eligible, then the trial court will resentence the defendant "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id*., subd. (f).) The factors governing the exercise of the trial court's discretion—the prisoner's criminal history, record in prison and any other relevant evidence—are set forth in Penal Code section 1170.126, subdivision (g)."[8]

---

[7] Of course, when defendant was sentenced the prosecution had no reason to plead or prove any such exception.

[8] Section 1170.126, subdivisions (a) through (g) read: "(a) The resentencing provisions under this section and related statutes are intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence.

"(b) Any person serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12 upon conviction, whether by trial or plea, of a felony or felonies that are not defined as

13

Defendant argues that he should not be relegated to the resentencing specifications of section 1170.126 – that is, a petition for recall of his sentence. He claims the ameliorative provisions of Proposition 36 were not intended by the voters to be given

serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7, may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause, before the trial court that entered the judgment of conviction in his or her case, to request resentencing in accordance with the provisions of subdivision (e) of Section 667, and subdivision (c) of Section 1170.12, as those statutes have been amended by the act that added this section.

"(c) No person who is presently serving a term of imprisonment for a 'second strike' conviction imposed pursuant to paragraph (1) of subdivision (e) of Section 667 or paragraph (1) of subdivision (c) of Section 1170.12, shall be eligible for resentencing under the provisions of this section.

"(d) The petition for a recall of sentence described in subdivision (b) shall specify all of the currently charged felonies, which resulted in the sentence under paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, or both, and shall also specify all of the prior convictions alleged and proved under subdivision (d) of Section 667 and subdivision (b) of Section 1170.12.

"(e) An inmate is eligible for resentencing if:

"(1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7.

"(2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12.

"(3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12.

"(f) Upon receiving a petition for recall of sentence under this section, the court shall determine whether the petitioner satisfies the criteria in subdivision (e). If the petitioner satisfies the criteria in subdivision (e), the petitioner shall be resentenced pursuant to paragraph (1) of subdivision (e) of Section 667 and paragraph (1) of subdivision (c) of Section 1170.12 unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.

"(g) In exercising its discretion in subdivision (f), the court may consider:

"(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes;

"(2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and

"(3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."

14

limited, retroactive application only to "future sentencing," but instead should be available to "defendants whose cases are not final" on the effective date of the initiative. He maintains that in accord with the venerable decision in *In re Estrada* (1965) 63 Cal.2d 740, he is "entitled to the benefit of a change in the law during the pendency of his appeal," which would grant him the absolute right to resentencing under sections §§ 1170.12, subdivision (c), and 667, subdivision (c). He also contends that to treat him and his class of defendants "differently [than] defendants sentenced after the adoption of 'Three Strikes Reform' would create serious issues of equal protection of the law under the Fourteenth Amendment."

The same challenge to prospective operation of Proposition 36 was presented in *People v. Yearwood* (Feb. 19, 2013, F063712) ___ Cal.App.4th ___ (2013 Lexis 58, *1), where the appellant was convicted of an offense that is not a serious felony within the meaning of section 1192.7, subdivision (c), or a violent felony within the meaning of section 667.5, subdivision (c), one count of unlawfully possessing marijuana in prison (§ 4573.6.), and sentenced as a third strike offender to 25 years to life imprisonment plus one year. Two prior strike allegations and one prior prison term allegation were sustained. (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(c), 667.5, subd. (b).) (*Yearwood, supra*, at p. *1.) Like defendant in the present case, if Yearwood had been sentenced for the marijuana possession conviction after the effective date of Proposition 36, an indeterminate life sentence would not have been imposed. The court was called upon "to decide if the amendments to sections 667 and 1170.12 apply retroactively to prisoners who were sentenced prior to the Act's effective date but whose judgments were not final as of that date." (*Yearwood, supra*, at p. *3.) The court concluded "that the common law doctrine embraced by the California Supreme Court in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] (*Estrada*) does not apply because section 1170.126 operates as the functional equivalent of a saving clause. The voters intended for the amendments to sections 667 and 1170.12 to operate prospectively only. Section 1170.126 is not ambiguous. It applies to prisoners, like appellant, whose judgments were not final on the Act's effective date." (*Id.* at pp. *3–*4.) The court observed: "The voters

15

intended a petition for recall of sentence to be the sole remedy available under the Act for prisoners who were serving an indeterminate life sentence imposed under the former three strikes law on the Act's effective date without regard to the finality of the judgment." (*Id*. at p. *13.)  The court explained: "The postconviction release proceeding crafted in section 1170.126 operates as the functional equivalent of a saving clause.  In part, section 1170.126(b) provides that '[a]ny person serving an indeterminate term of life imprisonment' imposed for a third strike conviction 'may file a petition for a recall of sentence.'  The quoted phrase is not ambiguous.  Section 1170.126(b) could have been, but was not, drafted so that it applied only to prisoners whose judgments were final before the Act's effective date.  We believe that section 1170.126(b) is correctly interpreted to apply to all prisoners serving an indeterminate life sentence imposed under the former three strikes law.  The finality of the judgment is not determinative for purposes of section 1170.126(b)." (*Id*. at p. *19, fn. omitted.)

In response to the appellant's claim in *Yearwood* that prospective-only application of amended sections 667 and 1170.12 infringes his equal protection rights, the court decided that under the governing rational relationship test: "Prospective application of amended sections 667 and 1170.12 furthers legitimate interests and does not unfairly discriminate against appellant.  A prisoner who was sentenced to an indeterminate life term before the Act's effective date may file a section 1170.126 petition upon finality of the judgment.  If qualified, the prisoner will ordinarily receive the same sentencing reduction that would have been obtained if he or she had been resentenced under amended sections 667 and 1170.12.  The discretionary public safety exception to second strike sentencing that is present in section 1170.126, but not in amended sections 667 and 1170.12, is rationally related to a legitimate state interest.  It increases the likelihood that prisoners whose sentences are reduced or who are released due to the Act will not pose an unreasonable risk of danger to the public.  Thus, the distinction drawn between felony offenders sentenced before, and those offenders who are sentenced after the Act's effective date, does not violate appellant's state or federal equal protection rights."

16

(*People v. Yearwood, supra*, ___ Cal.App.4th ___ Lexis 58, *28–*29; see also *People v. Brown* (2012) 54 Cal.4th 314, 318, 330.)

We agree with the reasoning in *Yearwood* and conclude that prospective application of Proposition 36 comports with the intent of the voters and does not deny defendant equal protection.

### V. The Imposition of a Concurrent Term on Count 2.

Also in his supplemental brief, defendant challenges the imposition of a concurrent term for the conviction of possession of a firearm by a convicted felon as charged in Count 2 (§ 12012, subd. (a)(1)). Defendant submits that the record fails to show, and the trial court made no finding, that his possession of a destructive device (§ 12303), which is the basis for the plea and conviction of Count 1, had "any other intent and objective in possessing the shotgun than the intent and objective he had in possessing the pipebomb." He therefore argues that multiple punishment for the two convictions may be barred under section 654, and asks that we reverse the concurrent sentence on Count 2 and remand the case for a new sentencing hearing at which the "factual issues" of whether the two offenses were "parts of the same course of conduct, and were incident to the same intent and objective" for purposes of the proscription against multiple punishment, may be resolved.[9]

Defendant relies on the established rule that the double jeopardy clause of the Fifth Amendment and section 654 forbid multiple punishment for the same offense. (*People v. Osband* (1996) 13 Cal.4th 622, 730; *People v. Wader* (1993) 5 Cal.4th 610, 670.) "Section 654, subdivision (a) provides, 'An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or

---

[9] Despite the lack of a section 654 objection below, " 'Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 295.) " 'It is well settled . . . that the court acts in "excess of its jurisdiction" and imposes an "unauthorized" sentence when it erroneously stays or fails to stay execution of a sentence under section 654' and therefore a claim of error under section 654 is nonwaivable." (*People v. Le* (2006) 136 Cal.App.4th 925, 931.)

omission be punished under more than one provision.' [Citations.]" (*People v. Calles* (2012) 209 Cal.App.4th 1200, 1215; see also *People v. Kramer* (2002) 29 Cal.4th 720, 722; *People v. Hall* (2000) 83 Cal.App.4th 1084, 1088.)

According to its plain language, " 'section 654 proscribes double punishment for multiple violations of the Penal Code based on the "same act or omission." ' [Citation.]" (*People v. Atencio* (2012) 208 Cal.App.4th 1239, 1243.) The California Supreme Court recently confirmed that "Section 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*People v. Jones* (2012) 54 Cal.4th 350, 358.)

Our courts also continue to follow a clear protocol in applying section 654 to multiple act cases, such as this one. "[W]hen a defendant's crimes involve a course of conduct, '[w]hether [the] course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Atencio, supra,* 208 Cal.App.4th 1239, 1244.) While section 654 bars multiple punishment where the defendant's course of conduct violated more than one statute but nevertheless comprised a single act or indivisible transaction, the statute "does not apply when the evidence discloses that a defendant entertained multiple criminal objectives independent of each other. In that case, 'the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citations.] . . .' [Citation.]" (*In re Jose P*. (2003) 106 Cal.App.4th 458, 469.) "[M]ultiple crimes that arise from a single course of criminal conduct may be punished separately, notwithstanding section 654, if the acts constituting the various crimes serve separate criminal objectives." (*People v. Davey* (2005) 133 Cal.App.4th 384, 390.) "[I]f the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even

18

though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citations.] The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple. Each case must be determined on its own facts." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.)

" 'The question of whether the acts of which defendant has been convicted constitute an indivisible course of conduct is primarily a factual determination, made by the trial court on the basis of its findings concerning the defendant's intent and objective in committing the acts. . . .' [Citation.]" (*People v. Nichols* (1994) 29 Cal.App.4th 1651, 1657; see also *People v. Coleman* (1989) 48 Cal.3d 112, 162; *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583.) Where, as here, "a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) " ' " 'A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.' [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368; see also *People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

Defendant possessed two distinctly different types of weapons. Destructive devices and shotguns are used for different purposes and in different contexts, and defendant may have possessed the weapons beginning at different times. The possession of both types of weapons was antecedent to and separate from the altercation that commenced when the police arrived at the house. Thus, no single course of criminal conduct is associated with possession offenses. Multiple criminal acts of possession of two different classes of weapons were committed. Defendant stated that he possessed the pipe-bombs to "keep the police from entering the house before he was ready," but discharged only the shotgun to protect himself when threatened by a laser pointed at him. We conclude that the evidence supports the implied finding that the possession offenses were committed for different objectives for purposes of section 654. Imposition of concurrent terms on Counts 1 and 2 was not error.

19

Accordingly, the judgment is affirmed.


_____
Dondero, J.


We concur:


_____
Marchiano, P. J.


_____
Banke, J.